Good morning, Your Honors. May I have two minutes for rebuttal at the end? Of course. Keep track of your own time, and I'll try to help you on that, okay? Yes, Your Honor. Steven Sherlag on behalf of Juvenile Male. May it please the Court, the government has failed to prove by a preponderance of evidence that transfer of the juvenile male to adult prosecution is in the interest of justice, and therefore we respectfully submit the district court abused its discretion in doing so. Under 18 U.S.C. section 5032, there are six factors enumerated that the district court is supposed to balance when making this determination, and we respectfully submit the court failed in significant degrees with regard to items 4 and 6, which will be the juvenile male's present intellectual development and psychological maturity, and the availability of programs designed to treat the juvenile's behavioral problems. At the hearing on the matter, several individuals were called on behalf of the government to attempt to prove the six factors that were enumerated, and we respectfully submit that each of the witnesses' testimony was fundamentally flawed in very simple and clear ways. When you take a look at the testimony of the four witnesses, there was first the Warm Springs Police Department Detective Ron Gregory, who essentially tried to say that he talks to lots of teens, and so he thought that the juvenile was similar to individuals of his age, and really that kind of generalized profile information has been looked on unfavorably by this court in earlier juvenile male proceedings, transfer proceedings cited in our briefs. Detective Gregory himself acknowledged that inaccurate impressions can occur in juveniles, especially those who are attempting to mask their developmental disabilities. Pre-trial Officer Adrian Alvarez, and importantly, Detective Gregory had no specialized training, no specialized training. Counsel, Judge Gould, if I could interject a question that was on my mind, and it may be a simple answer or a not simple one, but my understanding was that the judge had not submitted expert testimony in psychological evaluation of him, which I suppose he had a right to do. But if he objected to having expert examination of his psychology, then is that pertinent to whether we should have an open mind to the rules of evidence permitting lay testimony or lay expert testimony? Well, Your Honor, I would submit, first of all, it could potentially be such a concern and an inability for the court to consider lay testimony. But in this case, at the onset of the hearing, the government essentially abandoned their argument for a psychological examination. And the district court at page 7 of the transcript specifically asked the government whether or not they were seeking a psychological evaluation. And the prosecutor essentially admitted to the court that the government was only seeking the psychological evaluation in the event that Your Honor feels that the court needs it. And that's at page 20 through 21. Let me be sure I understand the sequence on this. Did that statement made before or after your client declined to participate in such an evaluation? My client declined first, Your Honor. Okay. And then the court was ahead before it. Right. The notion about whether or not the court would order it over our objection. And there is, of course, no case law, at least that I'm aware of, that requires an expert evaluation in such matters. Do you agree with that? I do, Your Honor. I do agree. But the government did, in this situation, essentially say to the judge, Judge, if you're comfortable going forward, we're comfortable going without it. Okay. So let's – I don't know that the other side is going to characterize it the same way, but let's just take that. You have these six factors that have to be considered. Arguably, the judge did consider them in a way that you didn't like, but did consider them. Your client says, I'm not going to be evaluated by an expert. The government gives up on that and says to the judge, look, if you need more, we'll give you more. But this is what we're going to give you. This is the practical application here. What's wrong with that? Well, Your Honor, first of all, if the court appoints a psychological expert, you know, certainly clients in these circumstances at the last minute can change their minds about what they want to do. But he didn't. He didn't. And also, but if you hired someone who actually had some type of psychological training or experience in working with juveniles, those types of experts can still render important expert opinions. But suppose your client decided not to talk to him, not to speak to him at all. Well, sure, Your Honor. The psychologist – Could sit there quietly with his head down. He's allowed to do that, Your Honor, under the Fifth Amendment. That's right. But if the government had sought the appointment of an expert that could have spoken with counselors from the juvenile facility at which he was housed, that could have spoke with social counselors, psychological counselors, teachers, there's certainly suggestions in the record by Beeson, who was the jailer at NORCORPS'  and the quality of their evaluation was based on just sort of passing conversations. What – your client was represented by counsel, right? Yes, Your Honor. Okay. So you have – the district court had four witnesses. Your client had refused to participate in an expert evaluation. It's hard for me to see how the district court clearly erred by proceeding in a way that didn't involve an expert witness when your client refused to participate in that. Sure. I mean, this is – you know, this is not rocket science. We're talking about dealing with individuals, and you can't make people eat their spinach if they don't want to do it. Well, respectfully, Your Honor, we objected to the court appointing – but the court didn't rule on that, and the court didn't order – You objected to the appointment of an expert. I'm sorry, Your Honor? You objected to the appointment of an expert? We objected, and then the court did not appoint because the government withdrew – Okay. So here now you're – even though your client wouldn't participate, you objected to the appointment of an expert witness, and the government didn't appoint somebody, and now you're here objecting on the basis that the government and the court didn't appoint an expert witness. Is that correct? We're not – we're not asking the court to appoint an expert witness. No, no, no. I understand. But you're saying that you got it wrong because they didn't have an expert witness. So you have these lay witnesses, each of which you feel are deficient in significant ways. That's correct, Your Honor. We think each of the lay witnesses had really only passing contact with the juvenile. Counsel, isn't the general standard we apply in the rules of evidence in Federal court that lay witnesses are permitted to give expert views if it would be helpful to the trier fact? Yes, Your Honor. And maybe I'm wrong about that and shouldn't ask you a leading question, but if that's the law and that's the general rule, then in we review? Here do we review the judge letting that testimony in for clear error or for abuse of discretion? I'm not arguing that the judge was erroneous in letting the evidence in. I'm suggesting to the courts that the type of evidence and what came forward was essentially useless evidence. It wasn't the type of evidence. It was clearly erroneous for the judge to rely on it because it was – these are people who barely knew the juvenile. So you're not objecting to it being considered, but you think it was not sufficient? Absolutely. So would the standard like in Jackson v. Virginia apply that – except it's not the same kind of proceeding, but to say could a rational trier fact find that this factor was satisfied? That wouldn't be beyond a reasonable doubt, but I guess by preponderance. I don't think a rational trier fact could find on this evidence, Your Honor. I think we point out the various failures of the type of evidence we have. We have folks who spent at maximum an hour to an hour and a half with the juvenile, having other things going on. We have shift supervisors. We have a manager of the juvenile facility who only admits to talking to the juvenile in passing. They could have called counselors from the facility. They could have called teachers. And there's acknowledgment that those types of facilities are available. And the same thing with regard to the types of treatment programs that were available and discussed by the witness, Cash. And there he couldn't – you know, I asked the witness, because I was actually counsel for the juvenile at the hearing, to describe the differences between the juvenile and adult anger management programs, and he couldn't. He acknowledged there was a – You might want to save some time for rebuttal. Yes, Your Honor. And maybe Judge Smith can give you two minutes, even though you're down to 37 seconds. Okay. Thank you, Your Honor. I'm sure we can work it out. Appreciate it, Judge. Okay. Let's hear from the government. Good morning, Your Honors, and may it please the Court. Kelly Zusman appearing on behalf of the United States. I guess I'll start with a questioning left off, which is in terms of whether or not the government abandoned its request for expert testimony. It did not. What we simply said was after the defendant objected to that, we presented to the District Court four witnesses, all of whom had had interactions with the juvenile, who then formed lay opinion about whether or not he was of average intellect for his age, average maturity for his age. In addition to those four witnesses, which I think the District Court viewed collectively, we also had all of his school records, which showed mixed results, that there were times when he did very well, there were times when he did poorly, but his test scores and his He certainly had the capacity. He had the intellectual capacity. He simply didn't have very good study skills, if you will. An average American kid, right? Yes. And Judge Brown considered that. He learned how to do carjacking and robbery, right? And assault and drug use and a number of other factors. Better teachers. What is the standard here? If I understand this right, okay, we let lay expert testimony in under the federal rules if it would help the trier of fact. So this trier of fact thought it would. He let it in. As I understand, appellant, they don't challenge the admissibility of the evidence, but they think it wasn't sufficient for a rational decision on his psychological development, et cetera. So is there a standard in the case law for how we would view whether the evidence is sufficient? And well, the standard is the government bore the burden of establishing these factors by a preponderance. I'm not aware of any case that holds that we have to come forward with a certain type of evidence in order to establish the defendant's intellect and maturity. And in fact, we attempted to get expert testimony and we were curtailed in that effort. So to my knowledge, there is no case that holds there must be expert testimony on the defendant's IQ or maturity level. And this kind of a case is a little unusual because what we're talking about is a transfer from the juvenile system to the adult system. And the judge at least has, it's an abusive discretion standard, isn't it, ultimately? Correct. To evaluate what's appropriate. Correct. And that kind of gets back to my point, which is that Judge Brown, in analyzing all of these factors, and as we know, she doesn't have to make express findings on whether the factors support transfer or don't support transfer. And in fact, in her conclusion, ultimately she doesn't hinge the decision to transfer on his intellect or his maturity or even on the availability of programs. She really pinned it on the testimony of Probation Officer Matt Pruitt, who said this is a high-risk offender. I'm worried about this person, given his track record on supervision, given what we're seeing as a pattern of increasing violence. I'm concerned about protection of the public and the need to rehabilitate him. And Judge Brown said in light of all of that, understanding that under the juvenile system, we can only incarcerate and supervise him for a maximum of five years. And Judge Brown, that's just not enough. For everything he's done, from age 11 up through age 17 and a half, we need more supervision than five years. And that was really the linchpin of Judge Brown's decision here. And as long as she considered, without specifically naming them the factors, the 5032 factors, that one basis alone would have been sufficient to make the decision, would it not? Absolutely. Unless the Court has further questions, the Government would submit. I have no questions here. No questions? Counsel, we'll give you two minutes and two seconds. Let me run up here, Judge. I wanted to, you know, Judge Gould is a very generous guy, but I wanted to show this panel is just all heart, so. Thank you, Your Honor. There actually have to be findings on the record as to each factor, Your Honor, and that's in USV Juvenile Mail 492-310-46. And I would suggest here, you know, there's some really clear factors that are not supported by the evidence. Judge Brown indicated, for instance, that there's much more expansive programming in the adult system, and really the evidence in the record from Mr. Cash was really to the opposite. There might be more programs, but the types of programs in the juvenile facility he talked about, there's more programs dealing with delayed maturation, which is. Forgive me, Counsel. Let's just deal with the issue of the length of time that he could have remained in the juvenile system, the five-year problem. Okay. Judge Brown, who had a lot of experience, indicated that she was concerned that five years of incarceration for this guy was simply not enough. Do you disagree with the counsel for the government that, assuming that she had considered all the factors, that if she focused on that, which is what's in the record, and just said this doesn't make it, you say that is inadequate to meet the standard? I would respectfully submit yes, Your Honor, because in this record we didn't have a full-on explanation of the types of programs available at the juvenile facility and the manner in which juveniles have been. Forgive me. That doesn't really bear on the issue of the five-year incarceration and the high risk that she felt your client posed. Sure. Does that make any difference? What I would suggest, Your Honor, respectfully, is that the Court, in making that kind of determination, using that in the factor, needs to look at results of what occurs with juveniles who have five years in the system in the intensive programs that we know are available from Mr. Cash's testimony about delayed maturation. The individualized counseling, which is far more expansive in the juvenile system, the much better ratios are available in the juvenile system. I see that I'm out of time, Your Honor. You have done a splendid job. Thank you very much. Thank you, Your Honor. It's a very interesting case and very well argued by both sides. Thank you both. The case just argued is submitted.
judges: Duffy, Gould, Smith